United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 12, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-11064
_____

BARRIE, et al.,

Plaintiffs - Appellants,

versus

INTERVOICE-BRITE, INC., et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
For the Northern District of Texas

_____

Before BENAVIDES, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Plaintiffs appeal from the district court's dismissal, pursuant to Fed. R. Civ. P. 9(b) and the

Private Securities Litigation Reform Act, of their securities fraud class action alleging violations of

§§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission

Rule 10b-5. For the reasons that follow, we reverse in part and remand.

## I. FACTS AND PROCEEDINGS

Intervoice-Brite, Inc. ("Intervoice" or "the Company"), the corporate defendant in this

securities fraud class action, develops and sells interactive voice software. Intervoice is

1

headquartered in Dallas and its stock is traded on the NASDAQ exchange. Intervoice was formed in 1999 as the result of a merger between Intervoice, Inc. and Brite Voice Systems, Inc. Following the merger, Intervoice represented that the merger was a success, citing impressive revenues and projecting strong earnings. In June 2002, however, the Company announced that it would report a loss and lower-than-projected revenues and earnings per share. This class action lawsuit followed.

On June 5, 2001, the plaintiffs, on behalf of themselves and everyone who purchased shares of Intervoice between October 12, 1999 and June 6, 2000 (the "Class Period"), filed their original complaint. They sued Intervoice and its chief officers (collectively "defendants").[1] The plaintiffs alleged that the defendants committed securities fraud by making false and misleading statements concerning the Company's August 1999 merger, its fourth quarter of 2000 and fiscal year 2001 earnings and revenue projections, and its fiscal year 2000 year-end earnings and revenue results. The plaintiffs argued that the misleading statements, based on improper accounting techniques, were made in forward-looking statements, press releases, and other corporate documents, and relied upon by analysts in their reports. The plaintiffs further alleged that the defendants made stock sales based on insider information, and relied on these sales as evidence of scienter. The plaintiffs sought to recover damages on behalf of all persons who acquired Intervoice stock during the Class Period.

This case was consolidated with substantially identical suits subsequently filed by other plaintiffs on September 5, 2001. On November 16, 2001, the plaintiffs filed their Consolidated Class

---

[1] The officers sued are: Daniel D. Hammond, Chairman of the Board of Intervoice, and until June 6, 2000, Intervoice's CEO; Rob Roy J. Graham, CFO of Intervoice; David W. Brandenberg, Intervoice's CEO since June 2000, a director of the Company, and President of the Company prior to 1994; Gordon H. Givens, Senior Vice President of Business Systems; David A. Berger, President and COO of Intervoice; Harold J. Brown, Vice President of Human Resources; and M. Gregory Smith, Senior Vice President of Business Systems Sales and Marketing Communications.

Action Amended Complaint. On January 14, 2002, the defendants filed a motion to dismiss that complaint. On August 8, 2002, the district court granted the motion to dismiss without prejudice, allowing the plaintiffs to file an amended complaint in compliance with the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b). The plaintiffs filed a First Amended Class Action Complaint ("Complaint") on September 23, 2002. On November 1, 2002, the defendants filed another motion to dismiss. On September 15, 2003, the district court granted the defendants' motion, dismissing the Complaint with prejudice. The plaintiffs timely appealed on October 9, 2003.

## II. STANDARD OF REVIEW

This Court exercises *de novo* review of a district court's dismissal of a civil complaint. *Goldstein v. MCI Worldcom*, 340 F.3d 238, 244 (5th Cir. 2003) (citing *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002)). We accept the facts alleged in the plaintiffs' complaint as true and construe their allegations in the light most favorable to them. *Id.* We will not, however, "'strain to find inferences favorable to the plaintiffs.'" *Id.* (quoting *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996)). "Nor do we accept conclusory allegations, unwarranted deductions or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (citing *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 406 (5th Cir. 2001)).

## III. DISCUSSION

A. **Allegations of fraudulent revenue recognition and fraudulent earnings projections**

In their Complaint, the plaintiffs allege that Intervoice and its controlling directors violated

Section 10(b) of the Security Exchange Act of 1934[2] by making false statements regarding Intervoice's revenues and earnings.[3]  In dismissing the Complaint, the district court held that the plaintiffs failed to plead in conformity with the pleading requirements of the PSLRA and Rule 9(b).

In 1995, Congress amended the 1934 Act by passing the PSLRA.  The PSLRA sets out heightened pleading standards for securities law class action complaints, stating that a plaintiff must allege with specificity each fraudulent statement, who made the statement, why it was false, and that

---

[2]     Section 10(b) provides in relevant part:

> It shall be unlawful for any person, directly or indirectly
> . . .
> (b) To use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (2000).

SEC Rule 10b-5, promulgated by the SEC under Section 10(b) of the 1934 Act,  provides in relevant part:

> It shall be unlawful for any person, directly or indirectly
> . . .
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2001).

[3]     The defendants also charge the individual defendants, as controlling persons of Intervoice, with violation of § 20(a) of the Exchange Act.

4

the statement was made with the requisite state of mind.[4]  "To state a securities-fraud claim under

section 10(b), and Rule 10b-5, plaintiffs must plead (1) a misstatement or omission; (2) of a material

fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the

plaintiffs' injuries." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir.

2004) (citing  *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

Federal Rule of Civil Procedure 9(b) also applies in securities fraud cases.  *See Goldstein v.*

*MCI Worldcom*, 340 F.3d 238, 245 (5th Cir. 2003).  Its requirements work in conjunction with those

---

[4]      The PSLRA provides, in relevant part:
(b) Requirements for securities fraud actions
      (1) Misleading statements and omissions
      In any private action arising under this chapter in which the plaintiff alleges
      that the defendant -
            (A) made an untrue statement of a material fact; or
            (B) omitted to state a material fact necessary in order to make the
            statements made, in the light of the circumstances in which they
            were made, not misleading;
the complaint shall specify each statement alleged to have been
misleading, the reason or reasons why the statement is misleading,
and, if an allegation regarding the statement or omission is made on
information and belief, the complaint shall state with particularity all
facts on which that belief is formed.
(2) Required state of mind
In any private action arising under this chapter in which the plaintiff may
recover money damages only on proof that the defendant acted with a
particular state of mind, the complaint shall, with respect to each act or
omission alleged to violate this chapter, state with particularity facts giving
rise to a strong inference that the defendant acted with the required state of
mind.
(3) Motion to dismiss; stay of discovery
      (A) Dismissal for failure to meet pleading requirements

      In any private action arising under this chapter, the court shall, on the
      motion of any defendant, dismiss the complaint if the requirements of
      paragraphs (1) and (2) are not met.

15 U.S.C. § 78u-4(b).

of the PSLRA.[5]  "To satisfy Rule 9(b)'s pleading requirements, the plaintiffs must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland*, 365 F.3d at 362 (quoting *Williams*, 112 F.3d at 177–78).

The plaintiffs now argue that the district court improperly applied these pleading requirements to the claims of fraud in revenue recognition and earnings projections, which we discuss in turn.

**(1)  Claims of fraud in revenue recognition**

The plaintiffs allege that Intervoice's strong FY00 revenue and earnings were the result of recognizing revenue on sales of its software products in violation of Generally Accepted Accounting Principles ("GAAP") and American Institute of Certified Public Accountants ("AICPA") Statement of Position 97-2 ("SOP 97-2").  The plaintiffs claim that the Company based its reported revenues for the fiscal year 2000 on this improper recognition of revenue.  SOP 97-2, which addresses software revenue recognition, was issued in January 1998 and applies to transactions entered into in fiscal years beginning after December 15, 1997.  It requires that before revenue is recognized for the sale of software, the following four conditions must obtain:  1) persuasive evidence of a contractual arrangement must exist; 2) delivery must have occurred; 3) the vendor's fee must be fixed or determinable; and 4) collectability is probable.  In explaining how to determine "whether delivery has occurred," SOP 97-2 states that even "[a]fter delivery, if uncertainty exists about customer

---

[5]  "The PSLRA reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading."  *Southland*, 365 F.3d at 363 (citing *Williams*, 112 F.3d at 177).

6

acceptance of the software, license revenue should not be recognized until acceptance occurs."

The plaintiffs alleged in the Complaint that Intervoice had recognized revenues at the time of shipment, before delivery and acceptance by customers. In the fourth quarter of 2000, the Company had been recognizing revenue on software sales prior to delivery, prior to acceptance by customers, and prior to customization. The plaintiffs contend that their allegations that the defendants stated to investors that Intervoice complied with a rule requiring revenue recognition on delivery and acceptance—but instead recognized revenue on shipment— was sufficient to state a claim. The Complaint also alleged that the Company admitted that it had improperly recognized $18.3 million in its Form 10-Q report filed on July 14, 2000. The Complaint alleged the essential elements: the existence of a rule requiring recognition on delivery and acceptance; Intervoice's acceptance of that rule; Intervoice's publication of financial information in violation of that rule; and Intervoice's admission of that violation. These allegations, the plaintiffs argue, are more than sufficient to meet the pleading requirements.

The defendants respond that their accounting methods were not improper and that they made no false statements regarding earnings. On December 3, 1999, shortly after the merger, the Securities and Exchange Commission ("SEC") issued Staff Accounting Bulletin No. 101 ("SAB 101") to guide companies in applying SEC Rules and GAAP to revenue recognition issues. SAB 101's stated purpose was to provide additional guidance in applying GAAP principles to revenue recognition in financial statements. SAB 101 added a topic entitled "Revenue Recognition" that restated SOP 97-2's test for revenue recognition. A portion of SAB 101 addressed the impact of formal contract acceptance provisions in determining whether to recognize revenue. It provided that, "when . . . contractual customer acceptance provisions exist, the staff generally believes that the seller should

7

not recognize revenue until customer acceptance occurs or the acceptance provisions lapse."

SAB 101 provided two procedures for registrants to adjust their revenue accounting. Registrants who had not applied SAB 101's formal contract acceptance criteria for delivery were entitled to utilize a one-time, cumulative effect adjustment to report a change in accounting methods. Registrants not previously in compliance with GAAP were required to restate prior financial statements following the procedure for correction of an error. Intervoice responded to SAB 101 by following the first procedure: reporting in its 1Q01 Form 10-Q that "effective March 1, 2000 the Company now recognizes revenue upon consumer acceptance" for sales of all but its more complex customized systems. The SEC never objected to Intervoice's actions, and Intervoice argues that this establishes an affirmative corporate assertion of compliance with GAAP.

We agree with the plaintiffs that the defendants' argument is fact-based and is therefore insufficient to support a motion to dismiss. The plaintiffs' claim that the Company improperly recognized unearned revenue in violation of SOP 97-2 is supported by sworn expert analysis. Dr. Lesser, the plaintiffs' expert, supported their accounting theory, stating: "Intervoice's reversal of revenue in the first quarter fiscal 2001 was not a result of SAB 101, but rather was required because Intervoice's prior revenue recognition practice did not comply with GAAP, specifically SOP 97-2." Because the accounting questions in this case are disputed, dismissal was not appropriate. The Complaint states a claim of fraud on the overstatement of revenue issue and does not rely on "conclusory allegations, unwarranted deductions or legal conclusions," as prohibited by this Court in *Southland*, 365 F.3d at 361. The Court of Appeals for the Eight Circuit, holding that such fact-bound defenses cannot succeed at the pleading stage, explained:

Undoubtedly, the accounting issues are complex; whether they were handled within

8

the parameters of good faith decision-making or whether the decisions amounted to recklessness will surely be the focus of any trial of this case. We will not prejudge that issue. But neither the district court, nor we, can conduct a battle of experts on a motion to dismiss. Rather, we must assume the truth of the allegations pleaded with particularity in the complaint. The strong-inference pleading standard does not license us to resolve disputed facts at this stage of the case.

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 666 (8th Cir. 2001). Here, the plaintiffs alleged with particularity that Intervoice's accounting practices violated SOP 97-2, and this allegation was adequately supported by expert opinion.

In dismissing the claims regarding false revenue recognition, the district court reasoned that the claims were insufficient because the plaintiffs failed to plead why the statements were false when made. The district court reasoned that the statements regarding earnings were "true when made, and only became false later when the revenue was rest ated." This conclusion ignored the plaintiffs' contention that Intervoice was fraudulently recognizing revenue and thus was inappropriate at the pleading stage.

The Complaint stated reasons why the financial reporting was false. The plaintiffs identified witnesses who claim that defendant CFO Graham actually knew about the alleged fraud. Confidential Witness ("CW") 13, a former Project Manager for No rth American and Latin American Network Sales, submitted an analysis to Graham of projects in which revenues were recognized by percentage of completion. CW 13 gave this report to Graham in January 2000, and claims that Graham and the Company used the analysis in deciding whether to fraudulently recognize the revenue and take a "charge" later. On May 26, 2000, CEO Hammond, CFO Graham, and then-director Brandenberg signed Intervoice's 10K report and recognized the revenue. Intervoice argues in its brief that the "obvious purpose of [Graham's] request was to gather the information necessary to make the one-

9

time adjustment in accordance with, not in contravention of, GAAP." The Complaint alleges to the contrary, however, and even under the heightened requirements of the PSLRA, this Court must accept the Complaint's allegations as true at this stage in the proceedings.

The Iusacell Transaction

Although the district court erred in dismissing all of the revenue recognition claims, it correctly dismissed the claims regarding the Iusacell transaction. In the Iusacell transaction, Intervoice stated in a February 9, 2000 press release that it had "received an order valued at approximately $8.7 million from a leading cellular service provider in Mexico, to expand the capacity of its prepaid wireless system . . . . The majority of the shipments pursuant to the order are scheduled for the Intervoice-Brite fiscal fourth quarter, which ends February 29, 2000." This press release, according to the plaintiffs, led investors to believe that the proceeds of the deal would be recognized as revenue in the fourth quarter of 2000. But, the plaintiffs argue, under SOP 97-2, Intervoice was not allowed to recognize revenue when software was shipped, but rather when it was actually earned. Three witnesses, CW 14, CW 3, and CW 17, all state that Intervoice could not and did not earn the $8.7 million in the fourth quarter.

Intervoice argues that its recognition of revenue was proper under the then-applicable accounting principles. For the reasons discussed above, this fact-based argument fails at this stage of the litigation. It then argues that none of the unnamed witnesses are alleged to have direct knowledge of the actual shipment schedule, the actual shipment date of the product, or when the Company actually recognized revenue from the order. Furthermore, Intervoice argues that the reliance on Project Activity Reports ("PARs") as evidence is insufficient because they indicate the amount of revenue "to be recognized," not whether the revenue had been recognized.

10

Regarding confidential witnesses, this Court has stated:

(1) if plaintiffs rely on confidential personal sources and other facts, their sources need not be named in the complaint so long as the other facts, i.e., documentary evidence, provide an adequate basis for believing that the defendants' statements or omissions were false or misleading;

(2) if the other facts, i.e., documentary evidence, do not provide an adequate basis for believing that the defendants' statements or omissions were false, the complaint need not name the personal sources so long as they are identified through general descriptions in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source as described would possess the information pleaded to support the allegations of false or misleading statements made on information and belief . . . .

*ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 353 (5th Cir. 2002). The Complaint's allegations are sufficient to allege the reliability of the reports. The Complaint states that CW 3 reviewed the PARs for the relevant time period and that the report showed that Intervoice "recognized all of the $8.7 million in revenue from the transaction prior to shipment in [the fourth quarter of 2000]." CW 17, a Sales Manager, confirmed that the components needed to fill the order were not even requested by the end of the fourth quarter. CW 14, the Project Manager for Network Sales in North America and Latin America, corroborated CW 3's statements.

Intervoice finally argues that the allegations regarding the Iusacell transaction "fail to sufficiently plead scienter, materiality, or reliance" because "there are no specific facts alleged identifying a particular corporate official was [sic] responsible for the recognition of revenue from the order." The plaintiffs reply that this Court should consider the Complaint *in toto* when deciding whether it pleads facts showing that Intervoice and its officers made false and misleading statements to investors. In support of this proposition, they cite this Court's decision in *Goldstein*, 340 F.3d at 247. *Goldstein*, however, held that an *in toto* analysis was appropriate for determining whether a

11

complaint alleges scienter, not whether it alleges false statements. "[W]e consider all the facts and circumstances alleged to determine whether they, *in toto*, raise a requisite strong inference of scienter." *Id*. at 246.

Intervoice is correct in this argument, and the specific claims regarding the Iusacell transaction must fail because the Complaint does not adequately identify a particular corporate officer who improperly recognized revenue from the Iusacell transaction. Nevertheless, the district court erred in dismissing all of the claims regarding improper revenue recognition, because the allegedly false statement concerning the Iusacell transaction was but one specific example of the alleged accounting fraud perpetrated by Intervoice and the Complaint sufficiently pleads improper revenue recognition, as discussed above.

**(2)     Allegations of fraudulent earnings projections**

The complaint identifies twenty-three allegedly fraudulent statements of earnings projections, but only twelve of these are attributed to Intervoice or one of the individual defendants. The remaining eleven statements are attributed to third-party analysts.

As a preliminary matter, the plaintiffs argue that the district court improperly dismissed its claims of false statements about the merger because it read the allegations in isolation rather than viewing the complaint *in toto*. This argument, as discussed above, fails. While this Court will view a complaint *in toto* when considering whether a complaint has adequately plead scienter, *see Goldstein*, 340 F.3d at 246, each allegation of fraud must individually meet the particularity requirements of the PSLRA. *See, e.g., Greenberg v. Crossroads Sys.*, 364 F.3d 657 (5th Cir. 2004) (analyzing each allegedly fraudulent statement independently).

**a.  Statements attributed to defendants**

The complaint identifies three statements made by Chairman Hammond and one by Senior Vice President Smith. Complaint at ¶¶ 37, 51, 56, and 58. The district court found that all four statements were not alleged to have been false when made.

Hammond's first statement, in paragraph 37, was: "We continued to focus on maintaining our sales momentum and are ahead of plan in implementing our synergy savings goals, as demonstrated by our better than expected earnings." Complaint at ¶ 37. The Complaint alleges that this statement was false because sales were slowing, the sales forces were decreasing, and there was high turnover in sales positions. Complaint at ¶¶ 41–42. The district court was correct in ruling that these allegations fail to show why the statement was false when made. That there were reductions in the sales force does not mean that the Company was not "focusing on maintaining sales momentum." The complaint does not allege what the "synergy savings goals" were. Additionally, Intervoice argues persuasively that the elimination of some of the sales force may have been, in fact, a part of meeting those goals.

In paragraph 56, the Complaint alleges that Hammond made the following statement in a press release: "[W]e are encouraged by the pipeline of sales opportunities for Business Systems." Complaint at ¶ 56. The Complaint alleges that this was false because sales were declining. *Id*. at ¶ 64. Intervoice persuasively argues that the allegations of declining sales are tied to sales in Network Systems, not Business Systems, and the two are completely different areas of Intervoice's business. Thus, the district court correctly dismissed this allegation.

Hammond's third statement, in paragraph 58 of the complaint, was also dismissed because the district court found it was not alleged to have been false when made: "It's becoming very clear that we've combined two good companies to make a stronger, more competitive one. Our

13

management team has met the challenges of the past nine months as we worked the merger plan and as a result, achieved our financial and operational goals." Complaint at ¶ 58. The district court properly held that the complaint's reliance on allegations of weak sales and layoffs of sales staff failed to sufficiently allege falsehood. The plaintiffs also argue, however, that the goals referred to by Hammond were financial goals and that the earnings reports fraudulently stated earnings. As discussed above, the financial statements were alleged to have been fraudulent. The plaintiffs therefore do allege that Hammond's statement regarding financial goals was false when made, because this allegation is based on their allegations of fraudulent accounting methods. The district court improperly dismissed this claim. Intervoice claims that the Complaint fails to allege scienter as to this statement. This argument fails, however. As noted above, courts may review a complaint *in toto* to determine whether scienter has been alleged. The Complaint alleges that Hammond had a motive for the revenue fraud: his bonus received for achieving targeted revenues. *Id*. at ¶ 13. Hammond received $597,870—175% of his annual salary—as a reward "for achieving the Company's targeted revenues and earnings." *Id*.

In paragraph 51, the Complaint alleges that Smith made a statement in response to investor concerns over insider stock sales, to the effect that insiders were selling because they were allowed more latitude by the Company. Complaint at ¶ 13. The plaintiffs allege that the explanation for the boost in sales was due to what the confidential witnesses stated: that the merger was a disaster and sales were suffering due to staff attrition. *Id*. at ¶ 52. This amounts to unacceptable "conclusory allegations" and "unwarranted deductions." *See Southland*, 365 F.3d at 361.

Six of the statements fail to adequately identify the speaker. Complaint at ¶¶ 29, 38, 44, 56, 59, and 68. Paragraphs 44 and 56 are press releases and contain no specific allegation as to who

14

made the statement. *Id*. at ¶¶ 44, 56. In *Southland*, this Court affirmed the proposition that:

> the PSLRA requires the plaintiffs to "distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud." As such, corporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded.

365 F.3d at 365 (emphasis in original) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, No. 4:00-CV-355-Y, 2002 U.S. Dist. LEXIS 26659, at *20-21 (N.D. Tex. April 2, 2002)). Although this Court stated that "corporate documents that have no stated author or statements within documents not attributed to any individual may be charged to one or more corporate officers provided specific factual allegations link the individual to the statement at issue," *id*., there are no such factual allegations here linking the individual defendants to the statements in the press releases. Consequently, these allegations were properly dismissed. Paragraph 29 attributes false and misleading statements to "management." Complaint at ¶ 29. Again, this fails on *Southland*'s rejection of the group pleading doctrine. Paragraphs 38, 59, and 68 attribute statements to "Hammond and Graham." *Id*. at ¶¶ 38, 59, and 68. The district court correctly held that "the allegation that 'Hammond and Graham' made a statement does not identify the speaker; it merely narrows the range of possible speakers down to two people." "[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud." *Southland*, 365 F.3d at 365 (emphasis in original, citation omitted). These claims were properly dismissed.

### b. Statements attributed to analysts

Eleven of the twenty-three allegedly false statements in the Complaint were made by third-party analysts. Complaint at ¶¶ 30, 31, 34, 39, 40, 53, 60, 61, 75, 76, and 77. The district court

correctly held that "the plaintiff must plead facts from which the court could infer that the defendant exercised the kind of control over the analysts' reports that would render the defendant liable for the statements made therein." The plaintiffs argue that the analysts were "conduits" for statements made by the defendants during conference calls. In *Southland*, this Court explained that to satisfy the pleading requirements on such a "conduit" theory, a complaint must specify: "who supplied the information to the analyst, how the analyst received the information, and how the defendant was entangled with or manipulated the information and the analyst." 365 F.3d at 373. The district court was correct that the Complaint does not meet this standard. The Complaint does not identify with particularity who provided the information to the analysts.

*Southland* also provided that:

> [s]ince the allegation of entanglement [between defendants and analysts] is central to the overall allegation of securities fraud, it must be pleaded with the required degree of specificity. The pleading should (1) identify the specific forecasts and name the insider who adopted them; (2) point to specific interactions between the insider and the analyst which allegedly gave rise to the entanglement; and (3) state the dates on which the acts which allegedly gave rise to the entanglement occurred.

365 F.3d at 373–74. The Complaint also plainly fails to meet these standards necessary to allege entanglement and a conduit theory.

The plaintiffs also argue that the allegations are sufficient because Intervoice itself is a defendant and may be liable for the false statements of its officers. While a defendant corporation may be *liable* for the false statements of its officers, however, this does not change the PSLRA's *pleading* requirements. False statements must still be alleged with particularity. Intervoice correctly argues that if particularity could be met as urged by the plaintiffs, the requirement to particularly allege who made the false statement would be eviscerated.

16

The plaintiffs also argue that defendants who silently listened as others made statements that they knew were false are liable for their omission in failing to correct a falsehood. They argue that whether a particular statement during a conference call or a road show was uttered by Hammond or Graham, both are liable: one for the utterance, and the other for the omission in failing to correct the falsehood.

As one district court held, "a high ranking company official cannot sit quietly at a conference with analysts, knowing that another official is making false statements and hope to escape liability for those statements. If nothing else, the former official is at fault for a material omission in failing to correct such statements in that context." *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 543 (D. Ohio 2000).

The defendants argue that this reasoning is inapplicable in this case, because the Complaint did not specify whether Hammond spoke and Graham failed to correct, or vice versa. They assert that the allegations concerning Hammond and Graham fail under this Court's rejection of the group pleading doctrine in *Southland*.

Here, the defendants' argument fails. In a case where it is pled with specificity that one defendant knowingly uttered a false statement and the other defendant knowingly failed to correct it, even if it is not alleged which defendant spoke and which defendant failed to speak, the fraud is sufficiently pleaded as to each defendant. This is not inconsistent with the plain language of subsection (1) of 15 U.S.C. § 78u-4(b), and accords with common sense and the policy considerations underlying the heightened pleading requirements. The *Southland* Court explained:

> "In securities fraud suits, this heightened pleading standard provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing

17

baseless claims and then attempting to discover unknown wrongs."

365 F.3d at 363 (quoting *Tuchman v. DSC Communications*, 14 F.3d 1061, 1067 (5th Cir. 1994)). In this case, where the Complaint alleges that false statements were made by Hammond or Graham, and the other knowingly failed to correct the falsehood, both Hammond and Graham are on fair notice of the claims against them. The district court erred in dismissing the claims attributed to Hammond and Graham, when one was alleged to have spoken the fraudulent statement, and the other was alleged to have failed to correct it.

For the same reason, Smith is properly liable for his alleged omission to correct Hammond and Graham's alleged misrepresentation in the conference call described in paragraph 38 of the Complaint. Although the Complaint does not allege whether Hammond or Graham uttered the alleged falsehood, it does allege with sufficient particularity that Smith failed to correct it.

**B.      Plaintiffs' allegations of suspicious stock sales as an independent basis of liability**

The plaintiffs allege that their assertions of suspicious stock sales are an independent basis of liability. Because they failed to raise this argument before the district court, it is waived. *Greenberg v. Crossroads Sys.*, 364 F.3d 657, 669 (5th Cir. 2004). Even if it had been raised below, however, this argument lacks merit. There are no allegations that the insider sales were not properly disclosed, and there can thus be no basis for liability. *See Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 367–69 (5th Cir. 2004).

**C.      Scienter**

We now turn to whether the Complaint adequately pleads scienter. The district court's opinion did not reach this question, but because the district court erred in holding that the Complaint did not adequately plead false statements, we must now consider whether the Complaint adequately

18

pleads scienter. "While the normal procedure where the lower court has not considered a pertinent issue is to remand the case, considerations of judicial economy can dictate otherwise in circumstances such as these, where the issue is a purely legal question subject to plenary review by this court." *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 688 (5th Cir. 2002).

The PSLRA requires that plaintiffs must plead with particularity facts giving rise to a strong inference that defendants acted with scienter, which is "'a mental state embracing intent to deceive, manipulate, or defraud.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).

The plaintiffs argue that the Complaint pleads scienter with respect to the revenue recognition and the earnings projections. As discussed above, we must look to the Complaint *in toto* in deciding whether it adequately pleads scienter. *Goldstein v. MCI Worldcom*, 340 F.3d 238, 246–47 (5th Cir. 2003).

Regarding the revenue recognition, the Complaint pleads that Graham, as CFO, knew or should have known that the company was using improper methods. The defendants, however, argue that allegations of a GAAP violation are not sufficient to establish scienter. Allegations of motive and opportunity, standing alone, cannot meet the pleading requirement. *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 410 (5th Cir. 2001). "The mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter. The party must know that it is publishing materially false information, or the party must be severely reckless in publishing such information." *Fine v. Am. Solar King Corp.*, 919 F.2d 290, 297 (5th Cir. 1990).

The Complaint, however, does not rest with allegations of GAAP violations and the defendants' knowledge of them. The Complaint identifies a particular witness directed by Graham

19

to investigate what plaintiffs allege is fraudulent accounting. Complaint at ¶ 95. The Complaint alleges that the defendants persisted in the incorrect accounting after receiving the report. *Id.*

The Complaint also adequately pleads scienter as to the statements (or omissions) of Hammond, Graham, and Smith. The allegations are supported by the reports of the confidential witnesses alleging the defendants' knowledge and severe recklessness when making the statements. Moreover, the allegations of knowledge and severe recklessness must be considered in conjunction with the defendants' bonuses and stock sales profits. Considering all of these allegations cumulatively, *Goldstein*, 340 F.3d at 246–47, the Complaint adequately alleged scienter as to the statements that survive dismissal.

## IV. CONCLUSION

The judgment of the district court is REVERSED IN PART insofar as it dismisses: (1) the claims alleging Intervoice's fraudulent accounting; (2) the claim that Hammond made a false statement regarding financial goals; (3) the claims alleging that Hammond or Graham made a false statement and the other failed to correct it; and (4) the claim that Smith failed to correct a statement made by Hammond or Graham. We also hold that the Complaint adequately alleged scienter, and foreclose further litigation below on that issue. The case is REMANDED for further proceedings.