IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 8, 2008

Charles R. Fulbruge III
Clerk

No. 06-11251

CARY ALAN LUSKIN, On behalf of themselves and all others similarly
situated; DEBBIE LUSKIN, On behalf of themselves and all others similarly
situated,

Plaintiffs-Appellees,

v.

INTERVOICE-BRITE INC.; DANIEL D. HAMMOND; ROB ROY J.
GRAHAM; DAVID W. BRANDENBURG; GORDON H. GIVENS; DAVID A.
BERGER; HAROLD D. BROWN; M. GREGORY SMITH,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:01-CV-1203

Before JONES, Chief Judge, and STEWART and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In this interlocutory appeal, Intervoice-Brite Inc. ("Intervoice") and the

individual defendants[1] (collectively, "Defendants") challenge the district court's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

[1] The individual defendants are the following Intervoice Executives: Daniel D.
Hammond, Rob-Roy J. Graham, David W. Brandenberg, David A. Berger, Gordon H. Givens,
M. Gregory Smith, and Harold D. Brown.

certification of a nationwide class in a suit alleging securities fraud. After the issuance of the district court's order certifying the class, we decided *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007), which held that in order to qualify for class certification, plaintiffs alleging securities fraud are required to prove that defendants' alleged misrepresentations were the proximate cause of plaintiffs' economic loss. Because the district court did not have the opportunity to apply *Oscar* to the facts of this case, we vacate the district court's class certification order and remand for reconsideration in light of *Oscar*. Further, the motion of the Plaintiffs-Appellees, investors represented by lead plaintiffs Cary and Debbie Luskin (collectively, "Plaintiffs"), that this Court take judicial notice of four submitted documents is dismissed as moot.

I.

Intervoice, the corporate Defendant in this securities fraud class action, develops and sells interactive voice software. Intervoice is headquartered in Dallas and its stock is traded on the NASDAQ exchange. Intervoice was formed in 1999, as the result of a merger between Intervoice, Inc. and Brite Voice Systems, Inc. Plaintiffs contend that the merger was unsuccessful, but that Defendants concealed this reality and falsely maintained that the merger would continue to result in strong revenues and earnings. In June 2000, Intervoice announced that it would report a loss and that revenues and earnings would be lower than expected. This class action lawsuit followed.

On June 5, 2001, the Plaintiffs, on behalf of themselves and everyone who purchased shares of Intervoice stock between October 12, 1999 and June 6, 2000 (the "Class Period"), filed their original complaint. They sued Intervoice and its chief officers, alleging that the Defendants committed securities fraud by making false and misleading statements concerning Intervoice's August 1999 merger, its fourth quarter of 2000 and fiscal year 2001 earnings and revenue projections,

and its fiscal year 2000 year-end earnings and revenue results. The Plaintiffs argued that the misleading statements, based on improper accounting techniques, were made in forward-looking statements, press releases, and other corporate documents, and relied upon by analysts in their reports. The Plaintiffs further alleged that the individual defendants made stock sales based on insider information, and relied on these sales as evidence of scienter. The Plaintiffs sought to recover damages on behalf of all persons who acquired Intervoice stock during the Class Period.

On September 5, 2001, this case was consolidated with substantially identical suits as a class action subsequently filed by other plaintiffs. The Defendants filed a motion to dismiss the consolidated class action complaint on January 14, 2002. On August 8, 2002, the district court granted the motion to dismiss without prejudice, allowing the Plaintiffs to file an amended complaint in compliance with the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b). The Plaintiffs filed a First Amended Class Action Complaint ("Complaint") on September 23, 2002. On November 1, 2002, the Defendants filed another motion to dismiss. On September 15, 2003, the district court granted the Defendants' motion, dismissing the Complaint with prejudice.

The Plaintiffs appealed. This Court affirmed the dismissal in part, and reversed the district court's judgment insofar as it dismissed: (1) the claims alleging Intervoice's fraudulent accounting, (2) the claim that Hammond made a false statement regarding financial goals, (3) the claims alleging that Hammond or Graham made a false statement and the other failed to correct it and (4) the claim that Smith failed to correct a statement made by Hammond or Green. Barrie v. Intervoice-Brite, Inc., 397 F.3d 249, 264 (5th Cir.), modified and reh'g denied, 409 F.3d 653 (5th Cir. 2005).

On remand, the Plaintiffs sought class certification under Federal Rule of Civil Procedure 23(b)(3), which permits certification where "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). After finding that Plaintiffs satisfied the requirements of Rule 23, the district court granted the motion for class certification. With respect to the Rule 23(b)(3) predominance requirement, the district court concluded that common issues of reliance predominated because Plaintiffs could invoke the fraud on the market presumption. The Defendants offered evidence to rebut the presumption, but the district court refused to consider such evidence, finding that an examination of the presumption at the class certification stage would be premature and improperly delve into the actual merits of Plaintiffs' claims. The Defendants also argued that the Plaintiffs failed to show that common loss-causation issues predominated, because the Plaintiffs' pleadings and class action proof did not meet the standard articulated by the Supreme Court in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005). The district court rejected that argument and held that Dura, decided on a motion to dismiss, did not establish any standards applicable at the class action stage. The class certified by the district court includes any person who purchased Intervoice stock between October 19, 1999 and June 6, 2000. Defendants timely requested leave to pursue an interlocutory appeal of the class certification order under Rule 23(f); this petition was granted on November 13, 2006. The only issue on appeal is whether the district court's finding of predominance was in error.[2]

---

[2] Defendants do not challenge the district court's determination that Plaintiffs satisfied the requirements of section (a) of Rule 23, nor do they challenge the district court's findings that the Rule 23(b)(3) superiority factors favor the maintenance of a class action suit.

II.

The determination to certify a class rests within the sound discretion of the trial court, exercised within the constraints of Rule 23. Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). A district court that premises its legal analysis on an erroneous understanding of the governing law has abused its discretion. Feder v. Electronic Data Sys. Corp., 429 F.3d 125, 129 (5th Cir. 2005).

III.

A case may proceed as a class action only if the plaintiffs demonstrate that all four requirements of Rule 23(a) are met,[3] and that at least one of the three requirements of Rule 23(b) are met. The party seeking certification bears the burden of proof. Berger v. Compaq Computer Corp., 257 F.3d 475, 479 n.4 (5th Cir. 2001). Plaintiffs here sought certification under Rule 23(b)(3), which states that a class may be certified upon a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); see also Unger v. Amedisys, Inc., 401 F.3d 316, 320 (5th Cir. 2005). Defendants argue that the district court erred in concluding that Plaintiffs met the first prong of this test: predominance. To determine whether the claims alleged on behalf of putative class meet the predominance requirement for class certification, we must examine the underlying cause of action. See Unger, 401 F.3d at 321. To succeed on a claim of securities fraud, a plaintiff must prove: (1) a material misrepresentation or omission by the defendant, (2) scienter on the part of the defendant, (3) a connection with the purchase or sale of security; (4)

---

[3] These requirements are that: (1) the class be so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties fairly and adequately represent the class. FED. R. CIV. P. 23(a).

reliance, often referred to as transaction causation; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss. Dura Pharm. Inc. v. Broudo, 544 U.S. 336, 341-42 (2005); Oscar, 487 F.3d at 264 n.5.

The decision of whether to certify a class often turns on the element of reliance and whether common issues of reliance predominate. Requiring proof of individualized reliance and injury from each member of the proposed plaintiff class would effectively prevent plaintiffs from proceeding in a class action, since individual issues would then overwhelm the common ones. See, e.g., Basic, Inc. v. Levinson, 485 U.S. 224, 245-46 (1988). Therefore, in Basic, the Supreme Court adopted the fraud-on-the-market presumption, which permits the trial court to presume that each class member has satisfied the reliance element as long as the plaintiffs can show that the defendant made material misrepresentations, the defendant's shares were traded in an efficient market, and the plaintiffs traded shares between the times the misrepresentations were made and the time the truth was revealed. Id. It was on the basis of this presumption that the district court certified the present plaintiff class. Defendants argue that the district court erred in presuming reliance without considering whether Plaintiffs had demonstrated loss causation.

Recently, in Oscar, we addressed the relationship between the elements of reliance and loss causation in the context of the fraud-on-the-market presumption. 487 F.3d at 262. In that case, which also involved an interlocutory appeal from an order certifying a securities fraud class action, we vacated the class certification order, holding that a certification enabled by the fraud-on-the-market doctrine must be supported by a showing of loss causation. Id. In doing so, we recognized that "Basic allows each of the circuits room to develop its own fraud-on-the-market rules." Id. at 264 (quoting Abell v. Potomac Ins. Co., 858 F.2d 1104, 1120 (5th Cir. 1988) vacated on other grounds sub nom. Fryar v.

Abell, 492 U.S. 914 (1989)). This Court "has used this room . . . to tighten the requirements for plaintiffs seeking a presumption of reliance." Id. at 264-65 (internal citations omitted). We require more than proof of a material misstatement; "we require proof that the misstatement actually moved the market." Id. at 265. Essentially, this circuit "require[s] plaintiffs to establish loss causation in order to trigger the fraud-on-the-market presumption." Id. Therefore, "to trigger the presumption of reliance, plaintiffs must demonstrate that . . . the cause of the decline in price is due to the revelation of the truth and not the release of the unrelated negative information." Id. (citing Greenberg v. Crossroads Sys., Inc., 364 F.3d 657, 665 (5th Cir. 2004)).

In Oscar, as here, the plaintiffs argued that loss causation is not properly addressed at the class certification stage. Id. at 266. The Oscar plaintiffs contended that the class certification stage is not the proper time for defendants to rebut the fraud-on-the-market presumption and that requiring proof of loss causation at that stage improperly combines the market efficiency standard with actual proof of loss causation. Id. We rejected this argument because "the plain text of Rule 23 requires the court to 'find', not merely assume, the facts favoring class certification." Id. at 267 (citing Unger, 401 F.3d at 321). Rule 23, therefore, mandates that a district court undertake complete analysis of fraud-on-the-market indicators, including loss causation, prior to certifying a plaintiff class. Id. at 269. In conducting this analysis, "a district court must resolve factual disputes relevant to each Rule 23 requirement and find that whatever underlying facts are relevant to a particular Rule 23 requirement have been established." Id. at 268 (citing In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 27 (2d Cir. 2006)). "The obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." Id.

Thus, based on these principles, we concluded in Oscar that "loss causation must be established at the class certification stage by a preponderance of all admissible evidence." Id. at 269. This holding compels the conclusion that the district court's certification, refusing to analyze whether plaintiffs established loss causation, was in error.

Nonetheless, Plaintiffs seek to distinguish Oscar. Plaintiffs point to a footnote in Oscar stating that: "[w]e address here only the simultaneous disclosure of multiple negatives, not all of which are alleged culpable." Id. at 265 n.22. They argue that, based on this footnote, Oscar should be limited on its facts to situations involving multiple negative disclosures. Because the present case does not involve multiple disclosures, the Plaintiffs contend, Oscar does not apply and the class certification should stand. An examination of the Oscar decision as a whole does not support the narrow reading advocated by the Plaintiffs. In Oscar, this Court undertook a broad examination of the fraud-on-the-market presumption in the context of class certification. We concluded that the proper application of Rule 23 requires a district court to find, prior to invoking the fraud-on-the-market presumption, that plaintiffs have established loss causation by a preponderance of all admissible evidence. We were compelled to reach this conclusion because of our prior precedents holding that loss causation is a fraud-on-the-market prerequisite and that Rule 23 mandates a complete analysis of fraud-on-the-market indicators at the class certification stage. Id. at 268-269 (referring to Greenberg, 364 F.3d at 665 and Unger, 401 F.3d at 325). This conclusion was not predicated on the factual circumstance of multiple negative disclosures, but instead on the intersection of the necessary elements of a  securities fraud cause of action and the rigors of Rule 23 class certification. There is no reason why the concerns stated in Oscar do not equally

apply to cases in which only one negative disclosure is at issue.[4] Therefore, because the district court's decision to certify the present class was based on an erroneous understanding of the governing law, we vacate the order granting class certification. See Feder, 429 F.3d at 129 (noting that a district court that premises its legal analysis on an erroneous understanding of the governing law has abused its discretion).

Both parties argued before this Court that, if Oscar is applicable, the evidence produced before the district court compels a ruling in their favor. However, we decline to examine whether or not, on the record before us, Plaintiffs have demonstrated loss causation by a preponderance of admissible evidence. The Plaintiffs have indicated that they may have other admissible, relevant evidence to offer in support of class certification. Accordingly, we remand and allow the district court an opportunity to re-examine the class certification order in light of Oscar. The district court is free to consider any additional evidence that the parties may have to offer. On remand, Oscar requires that the district court examine whether the Plaintiffs have adequately demonstrated loss causation by a preponderance of all admissible evidence before permitting Plaintiffs to invoke the fraud-on-the-market presumption.

## IV.

For the foregoing reasons, we VACATE the class certification order and REMAND this case to the district court for a determination of whether Plaintiffs have demonstrated loss causation sufficiently to invoke the fraud-on-the-market presumption. We also DISMISS AS MOOT the motion of Plaintiffs requesting judicial notice of four submitted documents.

---

[4] In fact, in cases where there has been only one negative disclosure, loss causation should be even easier for plaintiffs to establish at the class certification stage.