United States Court of Appeals
Fifth Circuit

**F I L E D**

February 14, 2006

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 04-11300

FINANCIAL ACQUISITION PARTNERS LP, on behalf of themselves and
all others similarly situated; JOHN D. MAY, on behalf of
themselves and all others similarly situated,

Plaintiffs-Appellants,

versus

L. KEITH BLACKWELL; JONATHAN S. PETTEE; RANDOLPH E. BROWN; RON B.
KIRKLAND; DELOITTE & TOUCHE LLP, a Delaware Limited Liability
Partnership,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, BEAM,[*] and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

In this putative class action for securities fraud, Financial
Acquisition Partners and John D. May (Plaintiffs) appeal the
Federal Rule of Civil Procedure 12(b)(6) dismissal of their second
amended complaint pursuant to the Private Securities Litigation
Reform Act (PSLRA), 15 U.S.C. § 78u-4. Plaintiffs' claims arise
from their purchase of shares, and the bankruptcy shortly
thereafter, of Amresco Inc. Plaintiffs challenge the district

---

[*]Senior Circuit Judge, United States Court of Appeals for the
Eighth Circuit, sitting by designation.

court's: (1) holding implicitly that collateral estoppel did *not* preclude the individual defendants' raising certain defenses; (2) striking opinions from an expert's affidavit attached to the complaint; (3) holding Plaintiffs failed to satisfy the PSLRA's pleading requirements; and (4) denying leave to amend their complaint. **AFFIRMED**.

I.

The following factual recitation is based on the complaint at issue and public filings, all of which may be considered in deciding a Rule 12(b)(6) motion, as discussed *infra*.

Amresco was publicly traded. As a debtor in bankruptcy when this action was initiated, it was subject to the automatic stay provisions. 11 U.S.C. § 362.

Defendants L. Keith Blackwell, Jonathan Pettee, Randolph E. Brown, and Ron B. Kirkland (Individual Defendants) are former officers and directors of Amresco. Brown was chairman of the board and CEO from November 2000 until Amresco's bankruptcy filing; Blackwell, its general counsel and president; Pettee, its chief financial officer; and Kirkland, its senior vice president and chief accounting officer. Defendant Deloitte & Touche LLP was Amresco's auditor.

Prior to its 2 July 2001 bankruptcy filing, Amresco was a small and middle-market lending company with three main segments: commercial finance, asset management, and home equity lending. Its

operations centered around its commercial finance line of business. Commercial finance revenues were primarily earned from (1) interest and fees on loans to small and middle-market business owners; (2) accrued earnings on retained interests in securitizations; (3) servicing fees on its loan portfolios; and (4) gains on the securitization on sale of loans.

One of Amresco's significant divisions was a lender to restaurants (including well-known national chains) and other small to middle-market businesses. Amresco funded these loans through a warehouse financing facility (revolving credit line) before bundling them for sale to a third party. These bundled loans were securitized - sold into a trust and then bonds backed by underlying trust loans issued. Amresco retained an interest in the securitized loans. Borrowers signed a note for an amount 5 to 10% greater than the amount loaned and paid interest on that greater amount (credit enhancement). The credit enhancement also served as collateral for the loan; but, of course, if net losses in the securitization pool exceeded 10%, Amresco's cash flow would decrease. The premium was returned to borrowers if there were no deficiencies within the pool; otherwise, they forfeited those payments. If the loans became more than 105 to 360 days delinquent (depending on the loan), payments to investors were accelerated; Amresco's cash flow would decrease; and it would have to write-down some of its subordinated interests.

Because the anticipated payments on the retained interests extended into the future, Amresco had to estimate, and report on its financial statements, the present fair value of those payment streams. The Form 10-K for the year 2000 (Y2000 10-K), signed on 30 March 2001 and filed on 2 April, noted that different assumptions might materially affect the estimates.

Two key assumptions in that Y2000 10-K were the projected credit loss and the discount. Amresco believed net losses would *not* exceed the credit enhancement range, so that borrowers would absorb the entire loss. Therefore, it estimated a net credit loss of zero percent. Amresco stated that a 1.5% credit loss increase would reduce the value of Amresco's retained interest by $27 million.

Amresco's Y2000 10-K, accompanied by Deloitte's audit, reported assets of $715 million and shareholders' equity of $165 million. It also showed Amresco suffered losses of $69 million in 1998, $221 million in 1999, and $218 million in 2000. The Y2000 10-K stated Amresco no longer had access to its prior warehouse financing. Therefore, Amresco needed to find a new lender; but, the Y2000 10-K stated a new lender was *not* guaranteed and that, until one was found, Amresco's ability to make new loans was substantially impaired.

This action concerns shares of Amresco purchased from 29 March 2001 to 2 July 2001 by a claimed class. (Again, the Y2000 10-K

4

primarily at issue was signed on 30 March 2001 and filed on 2 April.) Plaintiffs claim fraud relating to (1) Amresco's financial statements; (2) statements its officers made to certain shareholders; and (3) other omissions. The allegations primarily involve the following events: (1) in April 2000, Amresco agreed to a material executive compensation plan for its officers, including the Individual Defendants, that should have been, but was not, disclosed immediately to the public; (2) on 12 March 2001, Amresco retained Greenhill & Co. to explore restructuring options, including, but not limited to, bankruptcy; (3) on 2 April 2001, Amresco filed its Y2000 10-K, signed by Brown, Pettee, and Kirkland (Plaintiffs allege numerous material misstatements and omissions related to this filing, including Amresco's not disclosing the potential for default, and eventually the default, of a $50 million loan to Duke & Long); and (4) on 10 May 2001, Brown, Pettee, and Blackwell met with shareholders in Oklahoma, allegedly telling them Amresco would obtain new warehouse financing. (These alleged statements were the subject of another action, discussed *infra*, ***Prescott Group Aggressive Small Cap, L.P. v. Blackwell, et al.***, No. 02-CV-0517-EA (M) (N.D. Okla. 25 Aug. 2003) (unpublished).)

Plaintiffs' complaint was filed in mid-2002. Approximately six months later, by joint motion, Plaintiffs declared their intention to file an amended complaint and Defendants agreed to

5

delay moving to dismiss until that complaint was filed. The motion was granted.

The first amended complaint was filed in early 2003. After Defendants moved to dismiss, Plaintiffs filed an opposed motion for leave to amend (to file the second amended complaint at issue). In July 2003, in granting leave to amend, the district court cautioned: additional amendment "[would] not be granted absent extraordinary circumstances". *Fin. Acquisition Partners, L.P. v. Blackwell*, No. 3:02-CV-1586-K (N.D. Tex. 28 July 2003) (unpublished).

Accordingly, that month, Plaintiffs filed their second amended complaint (SAC); Defendants moved to dismiss, including Deloitte's moving to strike Plaintiffs' expert's affidavit attached to the SAC. Responding in opposition to the motions to dismiss, Plaintiffs, *inter alia*, urged application of collateral estoppel, from the above-referenced Oklahoma *Prescott* litigation, to certain matters in dispute. In a detailed and comprehensive opinion that exceeded the 50-page SAC by only a few pages, the district court granted, in part, Deloitte's motion to strike; granted the motions to dismiss; and denied leave to amend the SAC (to file a fourth complaint).

II.

Plaintiffs contest the district court's: (1) implicitly denying application of collateral estoppel; (2) striking part of

6

their expert's affidavit; (3) holding the SAC failed to satisfy the PSLRA's pleading requirements; and (4) denying leave to amend the SAC.

A.

In the **Prescott** litigation, plaintiffs alleged Blackwell, Brown, Kirkland, and Pettee made misstatements in May 2001 (post-filing of the Y2000 10-K that April) in connection with their incentive compensation arrangements, Amresco's ability to obtain a warehouse line of credit, and the impairment of the Duke & Long loan. That action was settled, but only after denial of the Individual Defendants' motion to dismiss regarding the compensation and Duke & Long claims. Plaintiffs maintain such denial in **Prescott** provides collateral estoppel for those claims in this action.

The SAC was filed in July 2003; the **Prescott** dismissal order, that August. Plaintiffs first urged application of collateral estoppel in opposition to the motions to dismiss. In dismissing the action at hand, the district court by implication rejected such application. No authority need be cited for the rule that a reviewing court will consider an issue properly presented to a district court, even though not addressed by it.

Some opinions by our court hold review of a collateral-estoppel decision is *de novo*, *see, e.g.*, **United States v. Brackett**, 113 F.3d 1396, 1398 (5th Cir.), *cert. denied,* 522 U.S.

7

934 (1997); others, for abuse of discretion, *see*, *e.g.*, **Aguillard v. McGowen**, 207 F.3d 226, 228 (5th Cir.), *cert. denied,* 531 U.S. 877 (2000). Because Plaintiffs' collateral-estoppel contention fails under either standard, we need not decide which to apply.

A judgment is preclusive in federal court if: (1) the prior federal decision resulted in a judgment on the merits; (2) the same fact issue was litigated in that court; and (3) the issue's disposition was necessary to the prior action's outcome. **Am. Home Assur. Co. v. Chevron, USA, Inc.**, 400 F.3d 265, 272 (5th Cir. 2005). In addition, there must *not* be any special circumstances making application of collateral estoppel unfair. **Winters v. Diamond Shamrock Chem. Co.**, 149 F.3d 387, 391 (5th Cir. 1998), *cert. denied,* 526 U.S. 1034 (1999). Settlement agreements, like consent judgments, are *not* given preclusive intent unless the parties manifest their intent to give them such effect. **Hughes v. Santa Fe Int'l Corp.**, 847 F.2d 239, 241 (5th Cir. 1988). Finally, collateral estoppel does *not* apply unless the facts and *legal standards used to assess those facts* are the same in both proceedings. **Copeland v. Merrill Lynch & Co.**, 47 F.3d 1415, 1422 (5th Cir. 1995).

Concerning such legal standards, the **Prescott** court in part based its motion-to-dismiss denial on the Tenth Circuit's permitting group pleading in PSLRA cases. Group pleading

8

> in its broadest form allows unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles. Under this doctrine, the plaintiff need not allege any facts demonstrating an individual defendant's participation in the particular communication containing the misstatement or omission where the defendants are "insiders or affiliates" of the company.

*Southland Sec. Corp. v. INSpire Ins. Solutions., Inc.*, 365 F.3d 353, 363 (5th Cir. 2004). Unlike the Tenth Circuit, our circuit does not permit such pleading. *Id.* at 363-65.

In their reply brief, Plaintiffs concede the *Prescott* plaintiffs used group pleading, which, again, is *not* permitted for PSLRA actions in our circuit. In addition, denial of a motion to dismiss is *not* a final judgment on the merits because the action continues after the denial. *Falcon v. Transportes Aeros de Coahuila, S.A.*, 169 F.3d 309, 312 (5th Cir. 1999). In sum, the *Prescott* motion-to-dismiss denial cannot be given preclusive effect in this action.

### B.

Plaintiffs next challenge the district court's granting, in part, Deloitte's motion to strike the expert's affidavit attached to the SAC. They claim the affidavit should be considered part of the SAC, pursuant to Federal Rule of Civil Procedure 10 (exhibit attached to the pleading considered part of it). In any event,

they claim the district court erred by not considering the entire affidavit.

Plaintiffs contend this ruling should be reviewed *de novo*. Instead, we review for abuse of discretion. *See* **Pedraza v. Jones**, 71 F.3d 194, 197 (5th Cir. 1995) (discussing whether to strike an expert's affidavit and stating decisions to do so are reviewed for abuse of discretion).

Attached to the SAC is an affidavit by Plaintiffs' accounting expert to bolster their fraud claims. Although the district court refused to consider the expert's conclusions (opinions), it did consider the affidavit's "nonconclusory, factual portions". **Fin. Acquisition Partners, L.P. v. Blackwell**, 2004 WL 2203253, at *5 (N.D. Tex. 29 Sept. 2004) (unpublished).

Plaintiffs rely on **Barrie v. Intervoice-Brite, Inc.**, 397 F.3d 249, *modified and reh'g denied*, 409 F.3d 653 (5th Cir. 2005), for the proposition that PSLRA plaintiffs can rely on expert affidavits to defeat motions to dismiss. **Barrie** held dismissal of a PSLRA action improper where the facts were in dispute. In doing so, it noted the complaint was supported by "sworn expert analysis". **Id**. at 257. **Barrie** does *not* hold, however, that, in securities-fraud actions, district courts must consider experts' affidavits attached to complaints. Apparently, the appropriateness *vel non* of considering such an affidavit was *not* raised in **Barrie**. In any event, the question was *not* decided by our court. *E.g.*, **Webster v.**

10

***Fall***, 266 U.S. 507, 511 (1925) (ruling that questions neither brought to the court's attention nor ruled on are not precedent); ***Thomas v. Tex. Dep't of Crim. Justice***, 297 F.3d 361, 370 n.11 (5th Cir. 2002) (stating an opinion is not binding precedent for questions not squarely before the court).

In its Rule 12(b)(6) dismissal, the district court held: the affidavit was not a written instrument under Rule 10; and it was not appropriate to consider the opinions in the affidavit. In striking those parts of the affidavit, the district court cited, and quoted from, ***DeMarco v. Depotech Corp***., 149 F. Supp. 2d 1212, 1221 (S.D. Cal. 2001). As ***DeMarco*** noted, allowing plaintiffs to rely on an expert's opinion in order to state securities claims requires a court to "confront a myriad of complex evidentiary issues not generally capable of resolution at the pleading stage". ***Id***. In addition, considering such opinions might require ruling on the expert's qualifications. ***Id***. This would be inappropriate at the pleading stage.

PSLRA complaints must allege specific facts demonstrating material misstatements or omissions made with scienter. Even if *non-opinion* portions of an expert's affidavit constitute an instrument pursuant to Rule 10, opinions cannot substitute for facts under the PSLRA. Therefore, the district court did *not* abuse its discretion in refusing to consider the opinions/conclusions in the affidavit.

11

C.

Plaintiffs claim the district court erred by holding they failed to satisfy the falsity and scienter requirements of the PSLRA and Federal Rule of Civil Procedure 9(b) (requiring pleading fraud claims with particularity).  We review *de novo* a complaint's being dismissed under Rule 12(b)(6) for failure to state a claim. *E.g.*, **Lowrey v. Tex. A & M Univ. Sys.**, 117 F.3d 242, 246 (5th Cir. 1997).

Such motions are "viewed with disfavor and ... rarely granted".  **Id**. at 247 (internal quotation omitted).  They should be granted only if it is evident the plaintiff cannot prove any set of facts entitling them to relief.  *E.g.*, **Blackburn v. City of Marshall**, 42 F.3d 925, 931 (5th Cir. 1995).  Along this line, all well-pleaded facts must be viewed in the light most favorable to the plaintiff.  *E.g.*, **Spivey v. Robertson**, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  On the other hand, as noted, the plaintiff must plead specific facts, *not conclusory allegations*, to avoid dismissal.  *E.g.*, **Guidry v. Bank of LaPlace**, 954 F.2d 278, 281 (5th Cir. 1992).

In ruling on Rule 12(b)(6) motions, district courts generally may rely only on the complaint and its proper attachments.  *E.g.*, **Travis v. Irby**, 326 F.3d 644, 648 (5th Cir. 2003).  They are permitted, however, to rely on matters of public record.  **Davis v. Bayless**, 70 F.3d 367, 372 n.3 (5th Cir. 1995).  Moreover, in

12

securities actions, the court may, as did the district court here, rely on "public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit", without, pursuant to Rule 12(b), converting the motion into one for summary judgment. *E.g.*, **Rothman v. Gregor**, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted).

Plaintiffs claim violations of § 10(b) of the Securities Exchange Act of 1934 (Exchange Act), as amended by the PSLRA, 15 U.S.C. § 78u-4(b)(1). Section 10(b) makes it illegal for a person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of the SEC's rules. Rule 10b-5 makes it unlawful for anyone to make *a false statement of material fact or to omit a material fact* necessary to make the statement not misleading. 17 C.F.R. § 240.10b-5. To state a claim under § 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities[:] (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately [injured him]". *E.g.*, **ABC Arbitrage v. Tchuruk**, 291 F.3d 336, 348 (5th Cir. 2002) (internal quotation omitted).

The PSLRA "was enacted in response to an increase in securities fraud lawsuits perceived as frivolous". **Newby v. Enron**

13

***Corp.***, 338 F.3d 467, 471 (5th Cir. 2003). It requires the complaint to specify each allegedly misleading statement and the reason why it is misleading; if an allegation is made on information and belief, the complaint must also state with particularity all facts on which the belief is formed. 15 U.S.C. § 78u-4(b)(1). Its pleading requirements incorporate Rule 9(b)'s fraud-pleading standard. ***ABC Arbitrage***, 291 F.3d at 349-50. That Rule requires a plaintiff to specify the alleged fraudulent statements, the speaker, when and where the statements were made, and why they are fraudulent. *Id.; see also* FED. R. CIV. P. 9(b). A district court must dismiss a securities-fraud claim failing to satisfy either the PSLRA's pleading requirements or those of Rule 9(b). ***ABC Arbitrage***, 291 F.3d at 350.

As discussed, to survive a motion to dismiss a securities-fraud action, plaintiffs must, *inter alia*, plead specific facts establishing a strong inference of scienter. ***Nathenson v. Zonagen, Inc.***, 267 F.3d 400, 407 (5th Cir. 2001). Restated, pursuant to the PSLRA, failure to adequately plead scienter requires dismissal of the complaint. 15 U.S.C. § 78u-4(b)(3)(A). Scienter can be established by demonstrating the intent to deceive, manipulate, or defraud. ***Ernst & Ernst v. Hochfelder***, 425 U.S. 185, 193 n.12 (1976). For PSLRA purposes, plaintiffs may establish scienter by demonstrating either intent *or* *severe recklessness*. *See* ***Nathenson***, 267 F.3d at 408 (defining

14

severe recklessness as highly unreasonable omissions or misrepresentations demonstrating an extreme departure from standards of ordinary care). Circumstantial evidence can support a scienter inference. *Id*.

Plaintiffs fail to satisfy the PSLRA's pleading requirements. Accordingly, their complaint was properly dismissed.

1.

First, the district court correctly rejected group-pleading allegations. *Southland*, 365 F.3d at 364-65 (holding PSLRA abolished group-pleading doctrine). For the claimed fraud, Plaintiffs must distinguish among defendants and allege the role of each. *Id*. Corporate officers are *not* liable for acts solely because they are officers, even where their day-to-day involvement in the corporation is pleaded. *Id*. Corporate statements can be tied to officers if plaintiffs allege they signed the documents on which the statements were made or allege adequately their involvement in creating the documents. *Id*.

The proscribed group-pleading involves the 10 May 2001 shareholder meeting that was the subject of the Oklahoma *Prescott* litigation. Plaintiffs allege some of the Individual Defendants made, with scienter, materially misleading statements at that meeting by telling shareholders it was *not* a matter of whether Amresco would obtain new warehouse funding, but a question of the terms to which it would have to agree.

15

Plaintiffs fail, however, to allege which Individual Defendant made which statement at that meeting. Therefore, the district court held this allegation failed to tie specifically any Individual Defendant to the statements and thus failed under the PSLRA's heightened-pleading standard. In addition, because neither Financial nor May attended the meeting, they cannot claim to have relied on any of the statements made at it.

Plaintiffs provide two alternate theories under which they contend Brown, Pettee, and Blackwell are liable for these statements: (1) under *Barrie*, the primary speaker is liable for the false statement made with scienter, and the silent witnesses are liable for an omission; and (2) pursuant to control-person liability under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (stating anyone "who, directly or indirectly, controls any person liable [for Exchange Act violations] shall also be liable ... to the same extent as such controlled person").

In *Barrie*, while recognizing the group-pleading ban in our circuit under *Southland*, 397 F.3d at 261, plaintiff was allowed to avoid that ban by alleging one defendant made a statement, and the other, knowing it was false, remained silent, *id*. at 263. Plaintiffs' complaint fails under *Southland* and *Barrie* because it only alleged a group of defendants made statements; in other words, it did *not* identify which defendant(s) made a statement and who remained silent. Moreover, to the extent *Barrie* might be read to

16

conflict with *Southland* and permit group pleading, *Southland*
controls. *E.g.*, ***Boyd v. Puckett***, 905 F.2d 895, 897 (5th Cir.)
(stating where holdings in two cases conflict, the earlier case
controls and is binding precedent), *cert. denied*, 498 U.S. 988
(1990).

In any event, Plaintiffs also failed to plead with specificity
reliance on those statements, that they were false or misleading
when made, or that a Defendant knew they were false or misleading.
Because Plaintiffs fail to establish primary securities-fraud
violations under § 10(b) or Rule 10b-5, they necessarily fail to
establish control-person liability. ***ABC Arbitrage***, 291 F.3d at 362
n.123.

The district court correctly dismissed the claims relying on
group pleading. Although such pleading does *not* bar all of the
claims, those remaining fail to establish securities-law violations
by any Defendant. Those against the Individual Defendants are
addressed first.

2.

Plaintiffs claim: the Individual Defendants made several
material misrepresentations and omissions; and they have
control-person liability. Because the SAC fails to plead fraud
with sufficient particularity, these claims were properly
dismissed.

17

a.

Again, an Individual Defendant is *not* liable for an Amresco business filing unless he either signed it or was involved in its creation. **Southland**, 365 F.3d at 365. Plaintiffs provide no specific facts either tying any of the Individual Defendants to such filings they did not sign or demonstrating scienter for any filings they did sign.

i.

Plaintiffs allege Amresco's Y2000 10-K was false and misleading because it significantly overstated assets, including the retained interest in securitizations. They also allege Amresco's Y1999 10-K, "signed by Defendant Kirkland among others", significantly overvalued the company's assets. As noted, Brown, Pettee, and Kirkland signed the Y2000 10-K. Plaintiffs contend it used improper discount rates for Amresco's loans and underestimated the past-due rate of loans within Amresco's conventional lending portfolio.

The facts Plaintiffs use to support their claims were disclosed, however, in the Y2000 10-K. For example, as the district court noted, Amresco disclosed that a different discount rate might have a material effect on the estimated fair-value amounts. Essentially, as the court also stated, what Amresco warned might happen, did indeed happen.

18

Amresco's financial statements explained outside investors absorbed the first 5 to 10% of losses from Amresco's loans. Thus, as the district court stated, it was reasonable to assume a loss rate of 0% for those loans. Plaintiffs fail to plead facts supporting an allegation that any Defendant knew the value of Amresco's assets was overstated, or that it was fraudulent in using its discount rate or credit-loss assumption.

ii.

Plaintiffs also claim the Individual Defendants fraudulently omitted from SEC filings any mention of the $50 million Duke & Long loan (and that Deloitte permitted them to do so), which Amresco had to write down after Duke & Long's parent company filed for bankruptcy. But Plaintiffs allege nothing suggesting the Individual Defendants acted fraudulently in this transaction, and the SAC does not adequately discuss any of the loan's details, such as how it was treated in bankruptcy or how it affected Amresco. Plaintiffs allege only that one of the Individual Defendants discussed the implosion of a $50 million loan.

Mere conclusory statements are insufficient to defeat dismissal under the PSLRA's heightened-pleading requirements. *See* ***ABC Arbitrage***, 291 F.3d at 348. Because Plaintiffs fail to allege with specificity any details regarding the Duke & Long loan, the allegation does not satisfy that requirement.

19

### iii.

Another insufficient allegation involves Amresco's retention of a restructuring specialist. Greenhill & Co. was retained on 12 March 2001 to help Amresco pursue any recapitalization or restructuring.

Plaintiffs contend the Individual Defendants made a material omission by failing to disclose that retention. They claim retaining Greenhill demonstrates statements about Amresco's recovery plan were fraudulent. They base this partially on Amresco's having previously heard a presentation from Wasserstein Perella & Company, dedicated solely to pursuing bankruptcy.

First, the district court could not have considered any contention regarding Amresco's dealings with Wasserstein because the SAC does *not* mention any restructuring firm other than Greenhill. Needless to say, in reviewing a Rule 12(b)(6) dismissal, we review only the well-pleaded facts in the complaint. This new allegation may *not* be considered. The claim otherwise fails.

### iv.

Plaintiffs also allege the Individual Defendants failed to timely disclose a material executive-compensation plan (adopted in April 2000), with bonuses potentially worth more than Amresco's market capitalization. Plaintiffs fail, however, to demonstrate which Defendant(s) had the duty to disclose this plan, including

20

when. They also fail to plead any facts supporting their claim as to the plan's value. Moreover, with one possible exception (30 March 2001 purchase), Financial purchased its shares *after* Amresco disclosed the plan (in the Y2000 10-K, signed on the day of the first purchase (30 March) and filed on 2 April). Therefore, it cannot claim it would *not* have done so had it known about the plan.

b.

Finally, Plaintiffs fail to adequately plead scienter for any Individual Defendant because the SAC makes only general allegations and conclusory statements, such as stating they knew, or were reckless in failing to disclose, adverse material. *See* **ABC Arbitrage**, 291 F.3d at 348. Along this line, Plaintiffs' mere allegation that the Individual Defendants were motivated by a desire to retain their jobs does *not* satisfy the scienter requirement. *See* **Melder v. Morris**, 27 F.3d 1097, 1102 (5th Cir. 1994) (holding scienter required for fraud claim not established merely by alleging defendants were motivated by job-retention goal).

Because Plaintiffs fail to plead material misstatements or omissions, as well as scienter, the claims against the Individual Defendants were properly dismissed. Those against Deloitte follow.

3.

Plaintiffs allege Deloitte misled the public to believe Amresco's financial statements accorded with Generally Accepted

21

Accounting Principles and Generally Accepted Accounting Standards. The expert's affidavit primarily addressed these allegations.

a.

As noted, Plaintiffs contest some of Amresco's assumptions for valuing its retained interests in the securitized loans, including the credit-risk rate of 0%. Amresco explained why it chose that rate. It also noted delinquencies in excess of 5 to 10% would likely result in additional write-downs. In fact, as the district court stated, Amresco provided those explanations in the same document, the Y2000 10-K, that stated the assumptions. Plaintiffs do *not* allege facts suggesting Amresco failed to use the best available estimates to choose its discount rates, as required by the Financial Accounting Standards Board (FASB). The SAC makes only a conclusory allegation that Amresco failed to follow FASB regulations. In any event, failure to follow accounting standards, without more, does not establish scienter; this claim fails. *See Fine v. Am. Solar King Corp.*, 919 F.2d 290, 297 (5th Cir. 1990), *cert. dismissed*, 502 U.S. 976 (1991).

b.

Plaintiffs also allege Deloitte improperly failed to issue a going-concern qualification in the light of Amresco's dire financial situation. The American Institute of Certified Public Accountants Code of Professional Standards § 341.06 (AU) requires that qualification if one of the following conditions exist: (1)

22

negative trends, such as recurring operating losses; (2) other indications of potential financial difficulties, such as the need to seek new sources of outside funding; (3) internal matters; and (4) external matters, such as legal issues that might jeopardize the company's ability to operate.

Although Plaintiffs' expert *opined* no reasonable auditor in Deloitte's position would have failed to issue the qualification, the district court properly refused to consider that opinion. Even without it, however, for Rule 12(b)(6) purposes, at least two of the above four factors existed: recurring losses and the need to obtain new financing.

Nevertheless, Plaintiffs did *not* plead sufficiently particularized facts demonstrating Deloitte was, *inter alia*, severely reckless in failing to issue the qualification, as required to sufficiently plead with particularity under the PSLRA. *See **Nathenson***, 267 F.3d at 408. The AU requires an auditor to issue the qualification only if there is substantial doubt the entity will continue, and only after determining the company's plan to deal with its problems would be ineffective. Again, Plaintiffs plead no facts demonstrating Deloitte was severely reckless in this regard.

Plaintiffs never pleaded with specificity how, or why, Deloitte was unreasonable in failing to determine Amresco did not have a reasonable turnaround plan. In addition, as the district

23

court stated, general allegations that Deloitte was somehow involved in the Duke & Long loan do *not* establish Deloitte's liability, just as the allegations fail to establish liability for the Individual Defendants.

D.

Finally, Plaintiffs maintain that, even if their SAC was properly dismissed, they should have been granted leave to amend (to permit a *fourth* try). The district court did not abuse its discretion in not permitting another amended complaint.

Leave to amend should be freely granted when justice requires. FED. R. CIV. P. 15(a). District courts, however, have discretion to manage their docket. *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (holding no abuse of discretion after plaintiff had three opportunities to correct any deficiencies in its complaint). Accordingly, although a district court's discretion to deny leave to amend is limited, leave to amend is *not* automatic. *Goldstein v. MCI Worldcom*, 340 F.3d 238, 254-55 (5th Cir. 2003) (holding no abuse of discretion where plaintiffs failed multiple times to correct deficiencies in complaint, and *failed to show court how they would correct them in a future filing*). Nevertheless, there is a strong presumption in favor of granting leave to amend; to this end, a district court may be reversed for failing to provide an adequate explanation for denying it. *Mayeaux*

24

*v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004).

Plaintiffs' leave-to-amend request appeared only in the conclusion of their response in opposition to the motions to dismiss (opposition). After urging denial of those motions, Plaintiffs stated: "In the alternative Plaintiffs request leave to amend to allege the *additional facts asserted herein as well as additional facts they may discover through investigation*". (Emphasis added.) (Along this line, Plaintiffs' opposition had earlier presented (improperly) facts *not* in the SAC, such as: (1) emails and an internal company memorandum questioning Amresco's underwriting policies; (2) Amresco's discussions with the Wasserstein restructuring firm; and (3) an allegation Deloitte provided the appraisals for the properties in Amresco's loan portfolio.)

In its opinion dismissing the complaint, in denying the cursory leave-to-amend request, the district court stated only that Plaintiffs failed to demonstrate "extraordinary circumstances" warranting leave to amend. *Fin. Acquisition Partners, L.P.*, 2004 WL 2203253, at *24. This language tracked the court's earlier-discussed caution in permitting filing the SAC. Plaintiffs urge such "extraordinary circumstances" language demonstrates the court used the wrong legal standard in denying leave to amend yet again. We disagree.

25

Although the court could have avoided confusion by employing different language in denying leave to amend, nothing in the record demonstrates it acted inflexibly. Plaintiffs had three attempts to produce a sufficient complaint. The court dismissed the complaint and denied leave to amend only after the third insufficient attempt.

In seeking to avoid dismissal, Plaintiffs' opposition employed facts claimed unavailable when filing the SAC. Although they had three prior opportunities to produce this information, and although they claimed the facts were previously unavailable and that others *might* become known, Plaintiffs did *not* explain why they were unable to obtain the information before filing the SAC. In other words, they never explained this to the district court as a basis for being allowed leave to file a fourth complaint. In short, *Plaintiffs never provided the requisite specificity* for leave to file a fourth complaint. **Goldstein**, 340 F.3d at 254-55. Moreover, none of the "previously unavailable" facts improperly included in the opposition sufficiently pleaded scienter. There was no abuse of discretion. *See* **ABC Arbitrage**, 291 F.3d at 362 (holding no "abuse of discretion to deny ... a third chance to offer more details").

### III.

For the foregoing reasons, the judgment is

**AFFIRMED.**