# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2008

Charles R. Fulbruge III
Clerk

No. 07-10705

ROBERT DORSEY, On behalf of himself and others similarly situated

Plaintiff-Appellant

v.

PORTFOLIO EQUITIES INC; CHARTER HOME FUNDING INC; CHARTER ASSET MANAGEMENT INC; CHARTER EQUITIES CORP; HAROLD P BARNES, JR; JAMES B BARNES

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, WIENER and CLEMENT, Circuit Judges.
EDITH BROWN CLEMENT, Circuit Judge.

Robert Dorsey ("Dorsey") challenges the district court's dismissal of his claims for fraud under federal securities law and Texas state law against Portfolio Equities, Inc. ("PEI"), Charter Home Funding, Inc. ("CHF"), Charter Asset Management, Inc. ("CAM"), Charter Equities Corp. ("CEC"), Harold Barnes ("H. Barnes"), and James Barnes ("J. Barnes") (collectively, "Defendants"). For the following reasons, we affirm in part and reverse in part the judgment of the district court.

## I. FACTS AND PROCEEDINGS

Dorsey purchased promissory notes in February 1998 from PEI, the proceeds of which were used to fund a real estate business operated by CHF. H. Barnes was president and a director of both PEI and CHF, as well as an officer and director of CAM and CEC. According to the complaint, he "held the largest financial interest in, and day-to-day operational control of, the CHF/PEI/CAM/CEC businesses." J. Barnes was vice-president and a director of CHF.

Dorsey alleged in his complaint that the promissory notes purchased by him were scheduled to pay twelve percent interest per year on a semiannual basis and mature on December 31, 2002. He alleged that H. Barnes prepared a Private Placement Memorandum ("PPM") with assistance from J. Barnes, dated April 1, 1997, which was used to offer and sell the promissory notes. Dorsey alleged that, in 1998 and in each year thereafter, H. and J. Barnes, along with unidentified PEI officers, solicited him and other investors to reinvest their interest payments from the promissory notes in additional promissory notes that had the same terms as the first offering outlined in the PPM. Dorsey alleged that many investors purchased additional notes in response to those solicitations.

The PPM states that PEI would lend the proceeds from the sale of the promissory notes to CHF, which would "use the funds principally to acquire single-family Residences . . . which CHF becomes obligated to purchase pursuant to [its] Guaranteed Purchase Program."[1] At the time that the PPM was

---

[1] Dorsey does not describe the nature of CAM's and CEC's business and fails to draw a connection between those companies and this litigation, other than to identify H. Barnes as the chief officer of those companies. The PPM mentions CAM and CEC in its description of H.Barnes's experience and education, stating:

> Since 1980 Mr. Barnes, as President of Charter Equities Corp. and Charter Asset Management Corp., has been responsible for the acquisition and management of five (5) apartment communities comprised of 600 units. Charter Equities Corp. serves as the General Partner of the partnerships that own the communities and Charter Asset Management Corp. is the management agent

published in April 1997, Dorsey alleged that PEI was a newly established company created for the specific purpose of financing a new business operation run by CHF, a small company with no prior business activities. The PPM stated that PEI would lend CHF up to $150,000 generated by the sale of the notes for CHF's use as general working capital. The remainder of the proceeds from the sale of the promissory notes would be used to make secured short-term acquisition loans to CHF pursuant to a loan agreement between CHF and PEI. CHF would use the borrowed money to buy residential real estate and would repay PEI when CHF sold the property. As security for the loans, CHF would either grant PEI a mortgage in the purchased property or, if CHF took title to the property in trust, assign a beneficial ownership in the trust to PEI. If CHF defaulted on its loan from PEI, PEI's security interest in CHF's properties was PEI's sole recourse against CHF.

PEI failed to repay the principal due on the promissory notes on the December 31, 2002 maturity date. Certain unidentified investors demanded payment, but PEI indicated that it had no ability to repay any principal or accrued interest due. Those investors conducted an investigation of PEI's claim, during which H. Barnes admitted that no documents exist to show that PEI received security interests in any of the properties purchased by CHF.

On March 5, 2004, Dorsey filed a putative class action against the Defendants on behalf of investors who had purchased the promissory notes issued by PEI. The complaint alleged various claims, including federal securities fraud, state common-law fraud, state statutory fraud, and state securities fraud. The Defendants moved to dismiss the complaint on several grounds, including failure to state a claim. The district court granted Dorsey permission to file an amended complaint to conform to the requirements for pleading fraud under

responsible for the daily operations of those apartment communities. Charter Asset Management Corp. is a HUD approved management agent.

Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), (d).

Dorsey's amended complaint alleged that H. Barnes had falsely represented to investors that collateral security interests would be available to repay the promissory notes in the event that PEI or CHF were unable to pay on the maturity date. He alleged that the representations of H. Barnes were false at the time Dorsey purchased his promissory notes in February 1998 and thereafter because PEI had already made unsecured loans to CHF from mid-1997 to early 1998 in violation of the terms of the PPM. Dorsey pointed to H. Barnes's admission that no documents exist to show that security interests had been given in any of CHF's properties as the factual basis of his allegation.

The Defendants moved to dismiss Dorsey's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court dismissed with prejudice all but one of Dorsey's claims for failure to state a claim, but Dorsey voluntarily dismissed that claim and his petition for class certification. The district court entered a final order disposing of all claims. Dorsey appealed, seeking relief only for himself as a single investor and challenging the dismissal of his claims for fraud under federal securities law and Texas state law.

## II. STANDARD OF REVIEW

This court reviews a district court's dismissal under Rule 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." Stokes v. Gann, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). This court, however, "will not strain to find inferences favorable to the plaintiff." Southland Sec. Corp. v. INSpire Ins. Solutions Inc., 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted). To avoid a dismissal for failure to state a claim, "a plaintiff must plead specific facts, not mere conclusory

allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994) (internal quotations and citation omitted).

Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006). A court is permitted, however, to rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007). Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint, including those made on appeal. See Fin. Acquisition Partners LP, 440 F.3d at 289.

## III. DISCUSSION

Both federal securities claims and state-law fraud claims are subject to the pleading requirements of Rule 9(b). See Abrams v. Baker Hughes Inc., 292 F.3d 424, 430 (5th Cir. 2002); Williams v. WMX Technologies, Inc., 112 F.3d 175, 177 (5th Cir. 1997) ("We see no principled reason why the state claims of fraud should escape the pleading requirements of the federal rules . . . ."). A heightened level of pleading is imposed for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "This Court interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 564–65 (5th Cir. 2002) (internal quotations omitted). Put simply, Rule 9(b) requires the complaint to set forth "the who, what, when, where, and how" of the events at issue. ABC Arbitrage Plaintiffs Group v. Tchuruk, 291 F.3d 336, 350 (5th Cir. 2002) (internal quotations omitted).

"Importantly, though, the second sentence of Rule 9(b) relaxes the particularity requirement for conditions of the mind, such as scienter: 'Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.'" Tuchman, 14 F.3d at 1068 (quoting FED. R. CIV. P. 9(b)). "Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir. 1994). "The plaintiffs must set forth specific facts supporting an inference of fraud." Id. "Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." Herrmann Holdings Ltd., 302 F.3d at 565 (internal quotations omitted). "If the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief. However, this luxury must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." Tuchman, 14 F.3d at 1068 (internal quotations and citation omitted).

Federal securities fraud claims are also subject to the pleading requirements of the PSLRA. See 15 U.S.C. § 78u-4(b); Abrams, 292 F.3d at 430. The PSLRA enhances the particularity requirements of Rule 9(b). See Southland Sec. Corp., 365 F.3d at 362–63. Under the PSLRA, plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

We now address each of Dorsey's fraud claims.

## A. Federal Securities Fraud Claims

Dorsey alleged in his complaint that the Defendants violated § 78j(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78a-78mm,

and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (collectively, the "Rule 10b-5 claim"). He further alleged that H. Barnes and J. Barnes violated § 78t(a) of the Exchange Act, which assigns joint and several liability to a "controlling person" for a controlled person's fraudulent acts.[2] To establish a claim for securities fraud under those provisions, Dorsey must plead with particularity that the Defendants' misstatement or omission of material fact was made with the intent to defraud, that he relied on the misstatement, and that the misstatement proximately caused his injuries. See Williams v. WMX Technologies, Inc., 112 F.3d 175, 177 (5th Cir. 1997). The district court dismissed Dorsey's claims for two reasons, only one of which he appeals.[3] The district court found that Dorsey had failed to plead his claims arising from purchases of promissory notes made after March 5, 1999 with the requisite particularity under Rule 9(b) and the PSLRA.

We hold that the district court properly dismissed Dorsey's federal securities law claims arising from purchases of promissory notes made after his initial February 1998 purchase. Dorsey's allegations regarding the solicitation and purchases after February 1998 appear in paragraphs 35 and 42 of his complaint:

> In 1998 and thereafter, many holders of the [promissory notes] were successfully solicited by the defendants to reinvest their annual interest payment under the Notes in additional Notes purportedly issued by PEI having the same terms and security as the notes originally purchased. These solicitations were conducted by PEI officers under the supervision and control of defendants [H.] Barnes and J. Barnes without any revised offering document or meaningful disclosure of the material facts concerning the PEI business.

---

[2] To recover under § 78t(a), a plaintiff must first adequately plead a primary violation of securities laws—here, violations of § 78j(b) and Rule 10b-5. See Southland Sec. Corp., 365 F.3d at 383–84.

[3] The district court dismissed Dorsey's Rule 10b-5 claim arising from the purchase of promissory notes on or before March 5, 1999, finding that they were barred by the statute of repose. Dorsey does not challenge the dismissal of those claims.

. . . .
> The fraudulent conduct of defendant [H.] Barnes and J. Barnes, acting individually and on behalf of PEI and CHF, continued to occur each year when they, directly and indirectly, solicited plaintiffs and other Class members to reinvest their interest earnings in additional notes without disclosing the absence of collateral security for the existing [sic] and the failure of CHF to repay loans made by PEI upon the sale of specific properties acquired, in part, with funds loaned by PEI.

Dorsey's allegations fail to state a Rule 10b-5 claim for several reasons, first of which is his failure to allege the purchase of a security. Dorsey alleged that he and others were solicited to make purchases, but he does not allege that he acted on those solicitations and made purchases after his initial purchase in February 1998. "Rule 9(b) does not allow the plaintiffs to force the defendants—or the court—to make such assumptions." Bagby v. Rydex Invs., No. 3:06-CV-0648-G, 2007 WL 507042, at *4 (N.D. Tex. Feb. 16, 2007). Dorsey argued on appeal that he made additional purchases. However, because our review is limited to his complaint and its proper attachments, we may not consider any additional evidence or pleadings.

Even assuming Dorsey made additional purchases after his initial purchase in February 1998, he failed to allege specifically when those purchases were made. All purchases made before March 5, 1999 are barred by the statute of repose; therefore, the dates of any additional purchases are crucial to the success of his claim.

Dorsey attempted to remedy the defects in his complaint on appeal by alleging new facts regarding precisely who solicited him to purchase additional promissory notes. Again, because our review is limited to the complaint and proper attachments, we may not consider any additional evidence or pleadings. Therefore, the district court's dismissal of Dorsey's federal securities fraud claims is affirmed.

B.  Texas Common-Law Fraud Claims[4]

Dorsey alleged in his complaint that the Defendants made affirmative false representations and failed to disclose material facts.  Under Texas law, to state a claim for common-law fraud based upon an affirmative false representation, Dorsey must allege that the Defendants made "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury."  Johnson & Johnson Med., Inc. v. Sanchez, 924 S.W.2d 925, 929–30 (Tex. 1996).  To state a claim for common-law fraud based on nondisclosure, Texas law requires Dorsey to allege that the Defendants concealed or failed to disclose a material fact that they knew Dorsey was ignorant of or did not have the opportunity to discover, that they intended to induce him to take some action by concealing or failing to disclose the material fact, and that he suffered as a result of acting on the Defendants' nondisclosure.  Bradford v. Vento, 48 S.W.3d 749, 754–55 (Tex. 2001).  However, "for there to be actionable nondisclosure fraud, there must be a duty to disclose."  Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.), 388 F. Supp. 2d 780, 788 (S.D. Tex. 2005) (citing Texas case law).  A duty to disclose may arise "where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue . . . ."  Id.

The district court dismissed all of Dorsey's common-law fraud claims, finding that Dorsey failed to plead scienter adequately pursuant to Rule 9(b).

---

[4] As discussed above, all claims made pursuant to federal securities law, Texas common-law fraud, and Texas securities law related to purchases of promissory notes allegedly made after Dorsey's initial purchase in February 1998 were properly dismissed due to Dorsey's failure to plead the elements of fraud with particularity because he did not include the specific dates of any subsequent transactions and did not identify the speakers making alleged misrepresentations.  Therefore, our review of Dorsey's claims is limited to his pleadings regarding his initial purchase of promissory notes in February 1998.

Although the PSLRA's stricter scienter requirement does not apply to state-law fraud claims, Rule 9(b) nevertheless incorporates an element of scienter; however, after examining Dorsey's pleadings, the district court found neither sufficient allegations of motive nor any identifying circumstances that indicated the Defendants' conscious behavior. See Herrmann Holdings Ltd. v. Lucent Technologies Inc., 302 F.3d 552, 565 (5th Cir. 2002).

As an initial matter, we hold that Dorsey's state-law fraud claims against CAM and CEC were properly dismissed; indeed, Dorsey does not allege that CAM and CEC made any false representations. He also fails to link them to the alleged misrepresentations in the PPM. Dorsey failed to allege in his complaint facts to support his assertion that H. Barnes, an officer and director of CAM and CEC, acted on behalf of those companies when he drafted the PPM. The PPM was issued by PEI to sell PEI's promissory notes. Even if H. Barnes were liable for fraud involving PEI, CAM and CEC are not liable for fraud merely because one of their officers committed fraud while wearing a different corporate hat.

Without commenting on the district court's assessment that Dorsey did not sufficiently allege motive, we do not agree with the district court's conclusion that Dorsey's allegations were insufficient to plead fraudulent intent on the part of the Defendants. This court has repeatedly stated in cases governed by the PSLRA that "normally an officer's position with a company does not suffice to create an inference of scienter." Nathenson v. Zonagen Inc., 267 F.3d 400, 424 (5th Cir. 2001). In Rule 9(b) cases, the same standard should arguably apply; to hold otherwise would effectively eliminate the scienter requirement for corporate officers. But even in federal cases governed by the PSLRA's heightened requirements for pleading scienter, we have recognized that there can be "a number of special circumstances" which, taken together with an officer's position, may support a strong inference of scienter. Id. at 424–25; see also Goldstein v. MCI Worldcom, 340 F.3d 238, 246 (5th Cir. 2003).

For example, in Nathenson, investors filed a securities fraud class action against a biopharmaceutical company, its CEO, and two outside directors alleging, among other things, that the defendants misrepresented to investors that one of the company's patents covered a potential product in order to inflate the company's share price artificially. 267 F.3d at 405–06. Although we agreed with the district court's dismissal of most of the investors' claims, we held that the circumstances alleged, when considered cumulatively, provided a strong inference of scienter with respect to the CEO and the company. See id. at 425. Those circumstances included the facts that the company was essentially a one-product company with its future prospects substantially dependent on that one product, the acquisition of the patent for that product was crucial for the company, the CEO publicly stated that the company's patent covered the product even when the company had ample opportunity to discover whether or not that was actually the case, and the company itself was small—it had less than forty employees. See id.

This case presents similar special circumstances that, when considered together, lend themselves to a sufficient inference of scienter. In paragraph 15 of his complaint, Dorsey alleged that "[b]ecause of their executive and board positions, defendants [H.] Barnes and J. Barnes knew of the false representations and material omissions adversely effecting [sic] the purchasers of [promissory notes], and were aware that the accurate information was being actively concealed from [them]." Dorsey further alleged that the Defendants' fraudulent intent was demonstrated by the fact that, at the time he purchased his promissory notes in February 1998, PEI had allegedly already failed to obtain security interests for loans it made to CHF. PEI was essentially a one-trick pony: it made loans to CHF. If CHF defaulted on its loans, PEI's ability to pay the interest and principal on its promissory notes was dependent upon having security interests in CHF's real estate. PEI had no employees, but was

managed by CHF, a company with only eight employees. Neither of the companies had extensive operating histories nor significant assets. H. Barnes served as president and director of PEI and CHF, and maintained day-to-day operational control of both businesses. J. Barnes was vice-president and a director of CHF. Those circumstances indicate that H. Barnes and J. Barnes knew or were severely reckless in not knowing whether PEI had failed to make secured loans to CHF at the time Dorsey purchased his promissory notes in February 1998, suggesting that Dorsey sufficiently pleaded scienter for his common-law fraud claims against H. Barnes, J. Barnes, PEI, and CHF. Therefore, we reverse the finding of the district court regarding Dorsey's common-law fraud claims against H. Barnes, J. Barnes, PEI, and CHF with respect to Dorsey's initial purchase of promissory notes in February 1998.

C. Texas Statutory Fraud Claims

1. Violation of the Texas Business and Commerce Code

Dorsey alleged in his complaint that H. Barnes, J. Barnes, and the "corporations under their domination and control" violated section 27.01 of the Texas Business and Commerce Code, entitled "Fraud in Real Estate and Stock Transactions." That section states:

> Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
> (1) false representation of a past or existing material fact, when the false representation is
> (A) made to a person for the purpose of inducting that person to enter into a contract; and
> (B) relied upon by that person in entering into that contract.

TEX. BUS. & COM. CODE ANN. § 27.01(a)(1). That statute, by its own terms, applies only to fraud in real estate or stock transactions. See id.; Burleson State Bank v. Plunkett, 27 S.W.3d 605, 611 (Tex. App. 2000). "A loan transaction, even if secured by land, is not considered to come under the statute." Burleson State

Bank, 27 S.W.3d at 611; *see also Greenway Bank & Trust of Houston v. Smith*, 679 S.W.2d 592, 596 (Tex. App. 1984) ("The statute makes no mention of any application to guaranty agreements, secured by real estate, or to a party who 'merely' loaned money for the purchase of real estate.").

Because Dorsey did not allege facts to show that the Defendants induced him to participate in a transaction for the transfer of real estate or stock, his claims against all defendants fail as a matter of law.

2.  Violation of the Texas Securities Act

Dorsey alleged in his complaint that H. Barnes and J. Barnes, acting individually and on behalf of PEI, CHF, CAM, and CEC, violated the anti-fraud provisions of the securities laws of Texas.  The Texas Securities Act (the "TSA") creates causes of action for securities fraud against various parties, including sellers of securities and aiders and abettors.  TEX. REV. CIV. STAT. ANN. art. 581-1 to 581-39.  Regarding sellers of securities, the TSA states:

> A person who offers or sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him. . . . However, a person is not liable if he sustains the burden of proof that either (a) the buyer knew of the untruth or omission or (b) he (the offeror or seller) did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

Id. art. 581-33(A)(2).

The district court dismissed Dorsey's claims under Texas securities law for his purchases made in February 1998 for failure to plead scienter with particularity.  But "unlike a common law fraud cause of action, an article 581-33 claim does not require scienter—i.e., proof that the speaker knew that the representation was false, or made it without regard to its truth or falsity." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 563 (5th Cir.

2002) (footnote omitted).[5]  Because Dorsey was not required to plead scienter, and he alleged all of the elements of Texas securities fraud under the TSA with sufficient particularity, his claims against H. Barnes, acting as a seller, individually and on behalf of PEI and CHF, should not have been dismissed.

The district court did not explicitly consider whether Dorsey had stated a claim against J. Barnes as an aider and abettor under the TSA.  Regarding aiding and abetting, the TSA states:

> A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable [under the TSA] jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer.

TEX. REV. CIV. STAT. ANN. art. 581-33(F)(2).  To state a claim for aider and abettor liability under the TSA, a plaintiff must show "(1) a primary violation of the securities laws, (2) that the aider and abettor has a general awareness of his role in the violation, (3) that he gave substantial assistance in the violation, and (4) that he intended to deceive the plaintiff or acted with reckless disregard for the truth of the primary violator's misrepresentations."  Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.), 388 F. Supp. 2d 780, 787 (S.D. Tex. 2005).  Unlike a claim for seller liability under the TSA, a claim for aider and abettor liability does require that a plaintiff plead and prove scienter.  In his brief, however, Dorsey disavows any need to plead scienter.  We therefore conclude that Dorsey relies solely on seller liability as a cause of action, which can only extend to H. Barnes, PEI, and CHF.

## IV.  CONCLUSION

---

[5] Although intent or scienter is not an element of a claim under article 581-33 for an untrue statement of an existing fact, we have held that intent or scienter is an element of a claim under article 581-33 for an untrue promise of future performance.  See Herrmann Holdings Ltd., 302 F.3d at 563.

For the reasons stated, we AFFIRM the district court's dismissal of Dorsey's federal securities fraud claims, his Texas statutory fraud claims pursuant to section 27.01 of the Texas Business and Commerce Code, and his aiding-and-abetting claim against J. Barnes pursuant to article 581-33(F)(2) of the Texas Securities Act. We REVERSE the district court's dismissal of Dorsey's common-law fraud claims against H. Barnes, J. Barnes, PEI, and CHF with respect to Dorsey's initial purchase of promissory notes in February 1998 and his claims against H. Barnes, PEI, and CHF pursuant to article 581-33(A)(2) of the Texas Securities Act.